IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| RED LION MEDICAL SAFETY, INC. ET AL., § § § Plaintiffs, § § v. § GENERAL ELECTRIC COMPANY § ET AL., § § Defendants. § | CASE NO. 2:15-CV-308 |

## ORDER

Before the Court are Defendant Alpha Source Inc.'s ("Alpha Source") Motion to Dismiss (Docket No. 19), Defendant GE's[1] Motion to Dismiss (Docket No. 20) and Alpha Source's Motion to Stay Discovery (Docket No. 45). For the following reasons, the Court **GRANTS** Alpha Source's Motion to Dismiss (Docket No. 19), **DENIES** GE's Motion to Dismiss (Docket No. 20) and **DENIES AS MOOT** Alpha Source's Motion to Stay Discovery (Docket No. 45).

## BACKGROUND

On May 22, 2015, Plaintiffs[2] filed a Second Amended Complaint (Docket No. 18) alleging that GE and Alpha Source violate: (1) the Sherman Act, § 1 through contract, combination or conspiracy; (2) the Sherman Act, § 2 through monopolization; (3) the Sherman

---

[1] General Electric Company, GE Healthcare, GE Technology Infrastructure and Datex-Ohmeda are referred to collectively as "GE."

[2] Red Lion Medical Safety, Inc., Universal Medical Services, Inc., Metropolitan Medical Services of NC, Inc., Biomedical Concepts, Anesthesia Service, Inc., Diversified Anesthesia, LLC, d/b/a Diversified Anesthesia,, Paragon Service, Bay State Anesthesia, Inc., POPN, Inc., Successor In Interest to Penn Biomedical Support, Inc., GasMedix, LLC, West Coast Anesthesia Specialists, Inc., Palo Verde Biomedical Consultants, LLC, Heartland Sales & Services, LLC, Medical Application Repair and Sales, LLC, Gulfstream Anesthesia Service, Inc., d/b/a Doctors Depot, SAS Acquisitions, Inc., d/b/a Anesthesia Specialties, and Trinity Biomedical Solutions, LLC are referred to collectively as "Plaintiffs."

Act, § 2 by attempting to monopolize; (4) the Sherman Act, §§ 1, 2 through combinations, contracts, conspiracies in restraint of trade, combination and conspiracy to monopolize; and (5) the Clayton Act, § 7 by illegal acquisition.  Plaintiffs identify alleged facts that form the basis of these claims for relief.

According to Plaintiffs, prior to around April 1, 2011, they serviced GE anesthesia gas machines and purchased replacement parts for the machines from GE.  Docket No. 18 at ¶¶ 6.2, 6.6.  Meanwhile, GE also had employees servicing and replacing parts in anesthesia gas machines.  *E.g., id.* at ¶¶ 4.1, 4.2, 6.6.  In the United States, 60 to 70 percent of anesthesia gas machines are manufactured by GE.  *E.g., id.*, at ¶ 11.6.

Beginning around April 1, 2011, GE entered into an exclusive distributorship agreement with Alpha Source.  *E.g., id.* at ¶¶ 6.2, 6.6.  This meant that servicing companies, who are not part of GE, are required to purchase replacement parts at a premium of eighteen to twenty percent from Alpha Source.  *E.g., id.* at ¶¶ 6.4, 16.25.  In addition, Alpha Source does not stock all parts for GE anesthesia gas machines, has a history of delayed shipments when parts are ordered, and charges an excessive price when parts are rush ordered.  *E.g., id.* at ¶¶ 6.5, 6.6.

These issues associated with Alpha Source are not experienced when GE services anesthesia gas machines.  *E.g., id.* at ¶¶ 6.7, 16.25, 16.26.  Because of GE's exclusive distributor relationship with Alpha Source, Plaintiffs can no longer compete in the servicing of anesthesia gas machines in the United States.  *E.g., id.* at ¶¶ 16.25, 16.38, 16.39.  Further, customers who need anesthesia gas machines serviced are negatively impacted.  *E.g., id.* at ¶¶ 6.6, 6.23.

In response to the Second Amended Complaint (Docket No. 18), on June 4, 2015, Alpha Source filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) (Docket No. 19).  A day later, GE filed its own motion to dismiss under Rule 12(b)(6) (Docket No. 20).

## RULE 12(b)(6) STANDARD

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate when a party fails to state a claim upon which relief can be granted. Federal law applies to motions to dismiss for failure to state a claim. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) (citing *Burlington N. R. Co. v. Woods*, 480 U.S. 1, 5 (1987); *Hanna v. Plumer*, 380 U.S. 460, 463–64 (1965)). The Court construes the complaint in plaintiff's favor and takes all well-pleaded facts as true. *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003). "The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *See Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

Under the general pleading requirements of Rule 8(a), the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Under the Rule 8(a) standard, a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, but a plaintiff must plead sufficient factual allegations to show that he is plausibly entitled to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 570 (2007) ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949–50, 1953 (2009) (discussing *Twombly* and applying *Twombly* generally to civil actions pleaded under Rule 8). "Determining whether the complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

## REQUIRMENTS FOR AN ANTI-TRUST CLAIM

**Sherman Act, § 1**

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1. While § 1 could be interpreted to proscribe all contracts, *see, e.g.*, *Board of Trade of Chicago v. United States*, 246 U.S. 231, 238 (1918), it is never "taken [as] a literal approach to [its] language," *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006). Rather, § 1 "outlaw[s] only unreasonable restraints." *State Oil Co. v. Khan,* 522 U.S. 3, 10 (1997).

**Sherman Act, § 2**

Section 2 of the Sherman Act makes it unlawful for an entity to "monopolize." 15 U.S.C. § 2. The offense of monopolization has two elements: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966).

**Clayton Act, § 7**

Section 7 of the Clayton Act prohibits acquisitions that serve "substantially to lessen competition, or to tend to create a monopoly." 15 U.S.C. § 18. Section 7 exists primarily to end, at the very beginning, mergers that could produce anti-competitive results. *Concord Boat Corp. v. Brunswick Corp.,* 207 F.3d 1039, 1050 (8th Cir. 2000), *cert. denied*, 531 U.S. 979, (2000). Generally, a "Section 7 action challenging the initial acquisition of another company's stocks or assets accrues at the time of the merger or acquisition." *Id.*

## ANALYSIS

**Alpha Source's Motion to Dismiss (Docket No. 19)**

In its motion to dismiss, Alpha Source describes Plaintiffs' claims for relief as a "business dispute." Docket No. 19 at 1. In response, Plaintiffs accuse Alpha Source of engaging in anti-competitive behavior by (1) failing to fully stock parts for GE anesthesia gas machines; (2) delaying shipments of parts; and (3) requiring an enhanced price and full payment before overnight shipments of parts. Docket No. 67 at 28:4-29:1.

Plaintiffs fail to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). Plaintiffs have not proffered facts that present a plausible claim that Alpha Source violated the Sherman Act, §§ 1, 2 or the Clayton Act, § 7. The facts Plaintiffs identify appear to be more appropriately characterized as a "business dispute," such as breach of a contract.

**Defendant GE's Motion to Dismiss (Docket No. 20)**

In its motion to dismiss, GE argues (1) exclusive distributorships are lawful; (2) anti-trust laws do not require GE to help its competitors; (3) the anti-trust laws do not prohibit GE from offering its competitors better deals than Plaintiffs can offer; (4) Plaintiffs fail to adequately plead a relevant product market, a relevant geographic market, an alleged market power or an agreement; and (5) Plaintiffs' claim for relief under the Clayton Act, § 7 is barred by the statute of limitations and because of a failure to allege a substantial lessening of competition. Docket No. 20.

In several of its positions, GE implies broad conclusions, such as an anti-trust violation cannot occur where one party can provide a better deal to customers, where one company refuses to help a competitor or where an exclusive distributorship is involved. *See id.* at 7-17. These

arguments are unpersuasive in establishing that Plaintiffs failed to state a plausible claim upon which relief can be granted. *See Twombly*, 550 U.S. at 570.

GE also states that Plaintiffs' alleged product market does not account for elasticity or substitutability, which are both pertinent characteristics in defining a product market. Docket No. 20 at 17–20. With respect to elasticity, GE determines that "Plaintiffs do not explain why there is a market for all parts for GE equipment or all services of GE equipment." *Id.* at 19. With respect to substitutability, GE believes that other non-GE anesthesia gas machines would likely gain a larger market share in the presence of supracompetitive pricing. *Id.* at 19-20. Plaintiffs alleged a sufficiently detailed and plausible product market in their Second Amended Complaint. *See, e.g.*, Docket No. 18 ¶¶ 4.1, 4.2, 6.3.

GE also criticizes Plaintiffs for defining the relevant geographic market as the United States without adequate justification. Docket No. 20 at 20-21. As an example, GE states "a hospital in Texarkana cannot turn to Plaintiff Red Lion (located in Delaware) to provide service." *Id.* at 21. Plaintiffs identify the alleged geographic market as "[t]he aforesaid competition takes place throughout the United States. The relevant geographic market is the United States." Docket No. 18 at ¶ 4.3.

Plaintiffs provide a rationale for their alleged relevant market. *See id.* In contrast, GE argues Red Lion is somehow limited to only servicing anesthesia gas machines in the state of Delaware. *See* Docket No. 20 at 21. This may be true; however, before the Court is a motion to dismiss, which only requires "enough facts to state a claim to relief that is plausible on its face." *See Twombly*, 550 U.S at 570. Plaintiffs met this burden.

GE further argues that Plaintiffs' statement that it holds market power through 60 to 70 percent of the alleged relevant market is insufficient because Plaintiffs did not properly define

the relevant product market. Docket No. 20 at 22. Because Plaintiffs' alleged relevant market is plausible, Plaintiffs' basis for alleging that GE has market power is also plausible.

GE claims that Plaintiffs fail to adequately allege an agreement with parts suppliers and others in paragraphs 7.10-7.14 of the Second Amended Complaint, because they do not include the "who, what, when, and where" required by *Twombly*. *Id.* at 23. However, the motion to dismiss fails to mention paragraphs 6.2 and 6.3 of the Second Amended Complaint, which state that the "arrangement between GE and Alpha Source constitutes a contract, combination, or conspiracy under the Sherman Act, § 1" and includes details of "who, what, when, and where" the agreement was entered into. *See, e.g.*, Docket No. 18 at ¶¶ 6.2, 6.3. Therefore, GE's position that Plaintiffs fail to adequately allege an agreement with parts suppliers and others is unpersuasive. *See Twombly*, 550 U.S. at 570.

With respect to GE's argument that Plaintiffs' claim for relief under the Clayton Act, § 7 is outside of the statute of limitations, the issue appears to require establishing facts that are not yet identified. *See* Docket No. 20 at 24–25. For example, the statute of limitations begins to run when a plaintiff's injury materializes. *See Midwestern Mach. Co., Inc. v. Nw. Airlines, Inc.*, 392 F.3d 265, 276 (8th Cir. 2004); Docket No. 20 at 25. The Court would fully consider an early partial motion for summary judgment from GE on this issue.

## CONCLUSION

The Court **GRANTS** Alpha Source's Motion to Dismiss (Docket No. 19) because Plaintiffs have not adequately pled the requirements for an anti-trust violation. Thirty (30) days after this Order, the Clerk is **ORDERED** to terminate Alpha Source from this case. Further, the Court **DENIES AS MOOT** Alpha Source's Motion to Stay Discovery (Docket No. 45).

In addition, the Court **DENIES** GE's Motion to Dismiss (Docket No. 20).  Plaintiffs have alleged facts in their Second Amended Complaint that form a plausible basis for an anti-trust violation under the Sherman Act, §§ 1, 2 and the Clayton Act, § 7.

**SIGNED this 31st day of March, 2016.**

*Robert W Schroeder III*
ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE