# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| Red Lion Medical Safety, Inc., *et al.* <br><br> Plaintiffs, <br><br> -against-. <br><br> General Electric Company, *et al*. <br><br> Defendants. | Civil Action No. 2:15-cv-308-RWS <br><br> JURY TRIAL DEMANDED |

## DECLARATION OF SAMUEL F. BAXTER
## IN SUPPORT OF PLAINTIFFS' ATTORNEYS' FEES APPLICATION

I, Samuel F. Baxter, declare and state as follows:

1. I am of legal age, have personal knowledge of the facts stated herein, and am otherwise competent to testify to these matters. I am a principal in the law firm of McKool Smith, P.C., hereinafter referred to as "McKool Smith." I am lead attorney for Plaintiffs in the referenced matter. I am submitting this declaration in support of Plaintiffs' Motion for Injunction, Attorneys' Fees, and Entry of Judgment Upon the Jury's Verdict. The statements of fact made in this declaration are based on my personal knowledge and on the records maintained by McKool Smith.

2. I have been admitted to practice in Texas since 1970. I am a former Texas State District Judge and District Attorney for Harrison County, Texas. I am admitted to practice in the United States Supreme Court, the Federal Circuit Court of Appeals, and the U.S. District Courts for the Northern, Eastern, Southern and Western Districts of Texas. For the past 28 years, my

practice has consisted of trying complex commercial litigation of varying types. I have tried over 200 cases, including several high-stakes antitrust cases, such as *R & D Business Sys. v. Xerox Corp.* (1993) and *Retractable Technologies, Inc. v. Becton, Dickinson and Company* (2013).

3. I have been consistently recognized among the top lawyers in my field by many of the country's leading legal publications and rankings, including *Chambers USA*, *The Legal 500*, and *Lawdragon*. I have been profiled in *Law360's* "Trial Aces" special feature, which recognized the Top 50 trial lawyers in the United States. I have also been included in *Benchmark Litigation*'s listing of the "Top 100 Trial Lawyers in America." I was recognized in the 2015-2017 editions of "*Best Lawyers in America*" for Litigation: Bet-the-Company, Commercial, Intellectual Property, Patent, M&A, and Securities. I am a fellow of the American College of Trial Lawyers and a member of the Texas Trial Lawyers Association, Association of Trial Lawyers of America, and East Texas Trial Lawyers Association. I have been designated in this case as Plaintiffs' expert on attorneys' fees issues.

**Background of this Lawsuit**

1. On March 3, 2015, thirteen of the seventeen Plaintiffs filed a complaint against General Electric Company, GE Healthcare, GE Technology Infrastructure, Datex-Ohmeda (collectively, "GE" or "Defendants") and Alpha Source, Inc. Plaintiffs alleged that Defendants engaged in various types of anticompetitive conduct in violation of Sections 1 and 2 of the Sherman Act, and Sections 2, 3 and 7 of the Clayton Act. Plaintiffs alleged that GE monopolized and attempted to monopolize the markets for GE anesthesia machine servicing, anesthesia machine sales, and GE diagnostic imaging machine servicing. The anticompetitive conducted alleged included GE's restriction of access to GE anesthesia machine parts and

training to Plaintiffs by, among other things, entering into an exclusive distributorship with Alpha Source and requiring independent service organizations such as Plaintiffs to provide a customer endorsement form in order to attend GE anesthesia machine training. Plaintiffs filed the First Amended Complaint on March 31, 2015, which, among other things, added three additional Plaintiffs. Plaintiffs filed the Second Amended Complaint on May 22, 2015, which added an additional Plaintiff.

2. At the outset of the litigation, Plaintiffs were represented by Paul F. Ferguson, Jr. of Provost & Umphrey Law Firm, LLP and Paul Bartlett, Jr. I was approached by counsel for Plaintiffs in approximately March 2015 regarding jointly representing Plaintiffs in the action. McKool Smith was thereafter retained by Plaintiffs, appearing as counsel of record for Plaintiffs in October 2015 and arguing motions to dismiss by Alpha Source and GE.

3. On June 4 and 5, 2015, Alpha Source and GE filed motions to dismiss Plaintiffs' claims. The Court conducted oral argument in October 2015. On March 31, 2016, this Court granted Alpha Source's motion, dismissing it from the case. The Court denied GE's motion to dismiss in full.

4. This action was complex and difficult to prosecute. The claims were brought on behalf of seventeen different Plaintiffs located across the country, and implicated multiple different relevant markets—GE anesthesia servicing, anesthesia machine sales, GE anesthesia parts and GE anesthesia machine service training—all of which were contested. Defendants retained experienced trial and antitrust specialists from across the country who marshaled a stout defense. The parties engaged in extensive pre-trial discovery, producing over 250,000 documents, including massive and detailed transaction data that required extensive expert review and analysis to unpack. The parties conducted 29 depositions; these depositions took place all

over the United States. Plaintiffs and Defendants each retained two experts. The experts submitted reports that totaled over 500 pages in text and tables. Defendants engaged in substantial motion practice, including summary judgment and *Daubert* motions with approximately 1,000 pages of supporting materials. Plaintiffs had to respond to each of Defendants' motions, prevailing on virtually all of them.

5. On March 14, 2017, Plaintiffs voluntarily dismissed their claims related to GE diagnostic imaging equipment. Plaintiffs did not spend significant time developing the diagnostic imaging claims relative to the claims concerning anesthesia machine sales and servicing.

6. Prior to the commencement of trial, on April 17, Plaintiffs advised Defendants that Plaintiffs solely would pursue at trial their claims for monopolization and attempted monopolization in violation of Section 2 of the Sherman Act, and that Plaintiffs would not pursue claims based upon alleged violations of Section 1 of the Sherman Act or Section 3 of the Clayton Act. On April 24, 2017, Plaintiffs submitted proposed jury instructions consistent with that representation. The claims that Plaintiffs did not present to the jury were grounded in the same factual circumstances as Plaintiffs' surviving claims, and Plaintiffs did not seek relief independent of Plaintiffs' surviving claims. I also note that at the October 2015 motion to dismiss argument, Plaintiffs advised the Court and Defendants that they would not pursue their Section 7 Clayton Act claims.

7. The parties conducted voir dire and selected a jury on April 18, 2017 and began trial the same day. For the trial the parties presented the testimony of 27 witnesses (25 live and 2 by deposition) and admitted over 1700 exhibits. The trial concluded on April 28, 2017, and the jury rendered a verdict favorable to all Plaintiffs that GE had monopolized and attempted to

monopolize the markets for GE anesthesia machine servicing and the sale of anesthesia machines. The jury awarded Plaintiffs individualized damages totaling $43,803,344.00.

**Materials Demonstrating That Requested Fees Are Reasonable and Necessary**

8.  Attached as Exhibit 1 is a list of every lawyer, paralegal and litigation support person who has worked on this case. That list shows the individuals' names, positions at their respective firms, the range of the individuals' rates during the time they worked on the case, the number of hours each person worked on the case, and the total amount for that person's time. The total amount of time spent on the case by all of these individuals (over the course of the last 2 years through the end of trial) is 12,021.2 hours for a total of $7,929,699.50 during that time.

9.  Attached as Exhibit 2 are the contemporaneous time records maintained by each McKool Smith time-keeper listed on Exhibit 1 for which Plaintiffs seek an award of fees. The records show a description of the work performed, the day on which the work was performed, the amount of time spent on each day time was recorded to this case, the rate charged by each individual, and the value of the work performed *(i.e.* the amount of time multiplied by the individual's billing rate). These time records begin in April 2015 and continue through April 2017. These time records are prepared by the individuals who have performed the work and who have knowledge of the matters recorded on their time records. The time records are prepared as a regularly conducted business activity of McKool Smith and are used by the firm to bill its clients. The attached time records have been redacted to remove privileged information.

10. It is my opinion that the rates of McKool Smith and co-counsel representing Plaintiffs are consistent with prevailing market rates in the relevant community for attorneys of similar experience, reputation and accomplishments in complex antitrust litigation.

11. Attached as Exhibit 3 are true and correct copies of portions of the Valeo 2017 Rate Report conducted by Valeo Partners of participants from the AmLaw 100 firms in the

United States for various practice areas and locations. The pages attached from the survey show the information gathered concerning partner and non-partner (including associate and paralegal) billing rates from 2011-2017 for AmLaw 100 firms for the practice areas of antitrust and litigation and the locations of Dallas and New York.

12. McKool Smith is highly regarded and acclaimed in complex, high-stakes litigation. McKool Smith is routinely recognized for excellence in this area, including, for example, recognition by Chambers USA as a leading firm for commercial litigation in Texas. Additionally, McKool Smith has been recognized by The National Law Journal and VerdictSearch for securing 16 "Top 100 Verdicts" in the United States–more Top 100 Verdicts over the last 10 years than any other law firm. As a result, McKool Smith relies on surveys of comparable law firms, such as firms listed in the AmLaw 100, to set its billing rates for the individual attorneys, paralegals, and litigation support individuals who work at McKool Smith. A comparison of the Valeo 2017 Rate Report survey results with the billings rates set out on the monthly time reports for each of the individuals working on the this case demonstrates that the annual billings rates for those individuals fall within the parameters established by the Valeo 2017 Rate Report.

13. The number of different Plaintiffs in this case resulted in tasks frequently being assigned to the different team members by plaintiff entity, rather than, as is often the case, the type of assignment. In some instances this resulted in, for example, more senior attorneys reviewing documents that were produced by a particular entity that was assigned to them, rather than tasking a more junior attorney to handle the task. At the same time, however, this meant that junior attorneys performed tasks, such as defending depositions, arguing motions and

conducting trial examinations, that are typically left to more senior lawyers.  I believe that this approach resulted in an efficient allocation of attorney resources in the case.

14.     Attached as Exhibit 4 are the resumes for some of the attorneys who spent the greatest amount of time on this case. The attached resumes show the background, experience, and professional recognition for the following attorneys on this case:  Samuel F. Baxter, John Briody, Radu Lelutiu, Jennifer Truelove, James H. Smith, Dana Vallera, and Colleen Bloss.

15.     Attached to this declaration as Exhibits 5-6 are the declarations of attorneys from other firms who also represented Plaintiffs in this matter. Those declarations are:

> i. The declaration of Paul Bartlett, Jr., with its attachments. Mr. Bartlett has been involved in the prosecution of this case since before the time it was filed.
>
> ii. The declaration of Paul F. Ferguson, Jr., with its attachments. Mr. Ferguson has also been involved in the prosecution of this case since before the time it was filed.

16.     Based on all of the referenced materials, it is my opinion that the rates and fee awards requested by McKool Smith and co-counsel representing Plaintiffs are reasonable and necessary in light of the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), including but not limited to: (1) prevailing market rates in the relevant community for attorneys of similar experience, reputation, accomplishments and capabilities with respect to complex antitrust litigation, (2) the amount involved and the results obtained, (3) the subject matter and complexity of antitrust litigation in federal court, and particularly this case involving 17 plaintiffs and (4) the experience, reputation, and ability of Plaintiffs' attorneys.

**Segregation of Time & Adjustments**

17. As noted above, Plaintiffs' claims related to diagnostic imaging equipment were dismissed prior to trial. Time spent developing Plaintiffs' claims related to diagnostic imaging are not easily separated from the claims relating to the GE anesthesia servicing market and the anesthesia machine sales market. The vast majority of counsel's time was spent on Plaintiffs' claims relating to the GE anesthesia servicing market and the anesthesia machine sales market. Only three of the seventeen Plaintiffs (Universal Medical, POPN and Trinity) serviced GE diagnostic imaging equipment. McKool Smith's time entries that specifically reference Universal Medical, POPN, Trinity, or diagnostic imaging generally account for approximately 515 hours out of a total 10,268.7 hours billed by McKool Smith (approximately 5%). This approximation overstates the time spent developing claims related to diagnostic imaging equipment, as both Universal Medical, POPN and Trinity also possessed claims related to the service of GE anesthesia equipment. I have overseen and reviewed the work performed on this case and it is my opinion that a 5% reduction of Plaintiffs' counsel's time conservatively accounts for the removal of time attributable to claims related to diagnostic imaging equipment.

18. Plaintiffs' claims against Alpha Source were dismissed on March 31, 2016. Mr. Bartlett was the primary attorney developing claims brought against Alpha Source. Mr. Bartlett estimates that 103 hours of his time are attributable to Alpha Source claim-related tasks. *See* Bartlett Decl. at ¶ 9. Mr. Ferguson estimates that approximately 17.5 hours of his time are attributable to Alpha Source claim-related tasks. *See* Ferguson Decl. at ¶ 8. McKool Smith's time concerning Alpha Source-related claims was modest. The only McKool Smith time fairly attributable to claims brought against Alpha Source was incurred in connection with preparation for the motion to dismiss hearing. I have consulted with the McKool Smith counsel who argued that hearing and, based upon those discussions, believe that a reduction of 25% for the time incurred by

McKool Smith for the period between October 16 and October 26, 2016 (with the exception of one entry that clearly related solely to GE-related issues) is an appropriate reduction to remove time fairly attributable to Plaintiffs Alpha Source claims.[1] Other McKool Smith attorney time relating to Alpha Source subsequent to the motion to dismiss hearing, in particular, time relating to obtaining necessary discovery from Alpha Source, related to and furthered Plaintiffs' claims against GE.

19. Accordingly, it is my opinion that, in order to account for the Court's dismissal of Plaintiffs' claims against Alpha Source, Plaintiffs' counsel's time should be reduced as follows: 103 hours billed for Mr. Bartlett; 17.5 hours billed for Mr. Ferguson; and 14.5 hours for McKool Smith. These reductions are reflected in the columns labeled "Reduced Bill Hours (Alpha Source and Clayton Act § 7 Time Removed) and "Reduced Bill Amount (Alpha Source and Clayton Act § 7 Time Removed)" in Exhibit 1.

20. With respect to Plaintiffs' claim based upon Section 7 of the Clayton Act—which claim Plaintiffs advised Defendants and the Court they would not pursue at the October 2015 motion to dismiss hearing—appropriate reductions have been made to counsel's time records. Mr. Bartlett estimates that 18.5 hours of his time are attributable to Plaintiffs' divestiture claim. *See* Bartlett Decl. at ¶ 9. Mr. Ferguson estimates that approximately 4 hours of his time are attributable to Plaintiffs' divestiture claim. *See* Ferguson Decl. at ¶ 8. As for McKool Smith an appropriate reduction is reflected in the aforementioned (¶ 17) 25% adjustment to McKool Smith time incurred between October 16 and October 26, 2015.

21. Accordingly, it is my opinion that, in order to account for Plaintiffs' Section 7 Clayton Act claims that were not pursued, Plaintiffs' counsel's time should be reduced as follows:

---

[1] As set forth further below, this 25% reduction also accounts for the removal of McKool Smith time spent on Plaintiffs Section 7 Clayton Act claim for divestiture, which Plaintiffs advised Defendants and the Court that they would not pursue at the October 2015 motion to dismiss hearing.

18.5 hours billed for Mr. Bartlett; 4 hours billed for Mr. Ferguson; and no further reduction for McKool Smith. These reductions are reflected in the columns labeled "Reduced Bill Hours (Alpha Source and Clayton Act § 7 Time Removed) and "Reduced Bill Amount (Alpha Source and Clayton Act § 7 Time Removed)" in Exhibit 1.

22. As set forth above, Plaintiffs did not present to the jury their claims for violations of Section 1 of the Sherman Act or Section 3 of the Clayton Act. Because these claims are steeped in the same facts and law as the Section 2 Sherman Act monopolization and attempted monopolization claims that Plaintiffs prevailed upon, it is my opinion that no reduction for attorney time spent developing these claims is appropriate.

**Summary of Requested Fees**

23. Based on the foregoing, it is my opinion that Plaintiffs are entitled to attorneys' fees in the following amounts:

a. $6,518,406.94 for the fees incurred by McKool Smith through the time of trial.

b. $652,341.25 for the fees incurred by Paul Bartlett, Jr. through the time of trial.

c. $274,360.00 for the fees incurred by Provost Humphrey and the Ferguson Law Firm through the time of trial.

24. This fee award reflects reasonable rates, time incurred in connection with a case of this size, and makes appropriate reductions for the claims related to GE diagnostic imaging equipment, claims asserted against Alpha Source, and claims that Plaintiffs did not pursue to verdict.

25. The total fees requested, based on the above, are $7,445,108.19 through the time of trial.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on June 9, 2017

                                              /s/ *Samuel F. Baxter*
                                              SAMUEL F. BAXTER