**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| RED LION MEDICAL SAFETY, INC., *et al.*<br><br>Plaintiffs,<br><br>-v-<br><br>GENERAL ELECTRIC COMPANY, *et al*.<br><br>Defendants. | Civil Action No. 2:15-cv-308-RWS<br><br>JURY TRIAL DEMANDED |

**PLAINTIFFS' OPPOSITION TO GE'S RENEWED MOTION TO EXCLUDE**
**TESTIMONY OF PLAINTIFFS' DAMAGES EXPERT**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ............................................................................................................1

BACKGROUND ............................................................................................................2

LEGAL STANDARD......................................................................................................4

ARGUMENT ..................................................................................................................5

    I.      GE Does Not Provide Any Basis to Exclude Dr. House's Analysis Relating to Disparagement. ...................................................................................................5

    II.     GE Does Not Provide Any Basis to Exclude Dr. House's Analysis Relating to GE's Software Policies. ...............................................................................................8

    III.    The Jury and This Court Have Already Found That Dr. House's Methodology Apportions Between Lawful and Non-Lawful Causes. ...........................................11

    IV.    This Court has Twice Ruled that Dr. House's Servicing Damages Methodology Is Reliable. .............................................................................................................12

    V.     Dr. House's Refurbished Anesthesia Machine Damages Are Reliable. .................15

i

## <u>TABLE OF AUTHORITIES</u>

CASES                                                                              Page(s)

*Blitzsafe Tex., LLC v. Honda Motor Co.*,
    No. 2:15-cv-1274-JRG-RSP, 2017 U.S. Dist. LEXIS 176613 (E.D. Tex.
    Jan. 10, 2017) ...........................................................................................6

*Children's Broad. Corp. v. Walt Disney Co.*,
    245 F.3d 1008 (8th Cir. 2001) ................................................................5

*Eastman Kodak Co. of N.Y. v. S. Photo Materials Co.*,
    273 U.S. 359 (1927)..............................................................................5, 6

*El Aguila Food Prods., Inc. v. Gruma Corp.*,
    301 F. Supp. 2d 612 (S.D. Tex. 2003) ..................................................15

*Ericsson Inc. v. TCL Commun. Tech. Holdings, Ltd.*,
    No. 2:15-cv-00011-RSP, 2017 U.S. Dist. LEXIS 183216 (E.D. Tex. Nov.
    4, 2017) ...............................................................................................10, 11

*Garziano v. E.I. Du Pont de Nemours & Co.*,
    818 F.2d 380 (5th Cir. 1987) ................................................................11

*Gen. Elec. Capital Bus. Asset Funding Corp. v. S.A.S.E. Military, Ltd.*,
    No. 5:03-cv-00189-WRF, 2004 U.S. Dist. LEXIS 30714 (W.D. Tex. Oct.
    21, 2004) ...............................................................................................10

*Gussack Realty Co. v. Xerox Corp.*,
    224 F.3d 85 (2d Cir. 2000)......................................................................9

*Imperial Trading Co. v. Travelers Prop. Cas. Co. of Am.*,
    No. 06-4262, 2009 U.S. Dist. LEXIS 132828 (E.D. La. July 28, 2009) .............9

*i4i Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010)..............................................................4, 7

*In re Cipolla*,
    541 Fed. App'x 473 (5th Cir. 2013) .....................................................12

*In re James Assocs.*,
    965 F.2d 160 (7th Cir. 1992) ..................................................................9

*Infusion Res., Inc. v. Minimed, Inc.*,
    351 F.3d 688 (5th Cir. 2003) ..................................................................5

*IQ Prod. Co. v. Pennzoil Prod. Co.*,
   305 F.3d 368 (5th Cir. 2002) ............................................................6

*Johnson v. Arkema, Inc.*,
   No. 6:09-cv-00107-WSS, 2010 U.S. Dist. LEXIS 148982 (W.D. Tex. Dec.
   16, 2010) ........................................................................13, 14

*Lerhman v. Gulf Oil Corp.*,
   500 F.2d 659 (5th Cir. 1974) ......................................................5, 13, 15

*Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery*,
   202 F. Supp. 2d 371 (D.N.J. 2002) ....................................................11

*Lyman v. St. Jude Med. S.C., Inc.*,
   580 F. Supp. 2d 719 (E.D. Wis. 2008)..................................................10

*Lyondell Chem. Co. v. Albemarle Corp.*,
   No. 1:01-cv-00890-MAC, 2007 U.S. Dist. LEXIS 97833 (E.D. Tex. Mar.
   8, 2007) ..........................................................................6

*Malcolm v. Marathon Oil Co.*,
   642 F.2d 845 (5th Cir. 1981) ..........................................................15

*More JB, Inc. v. Nutone Inc.*,
   No. 1:05-cv-00338-JRN, 2007 U.S. Dist. LEXIS 102151 (W.D. Tex. Mar.
   21, 2007) ......................................................................14, 15

*Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc.*,
   No. 6:11-cv-00492-RWS-KNM, 2017 U.S. Dist. LEXIS 178477 (E.D.
   Tex. Oct. 27, 2017) ................................................................10

*Prepaid Wireless Servs. v. Sw. Bell Wireless, Inc.*,
   No. M-00-302, 2002 U.S. Dist. LEXIS 28229 (S.D. Tex. July 23, 2002)....................6

*Retractable Techs., Inc. v. Becton Dickinson*,
   No. 2:08-cv-16-LED-RSP, 2013 WL 4776189 (E.D. Tex. Sept. 6, 2013)....................4

*SimpleAir, Inc. v. Google Inc.*,
   No. 2:14-cv-00011-JRG, 2015 U.S. Dist. LEXIS 135915 (E.D. Tex. Oct.
   5, 2015) ........................................................................4, 5

*Soden v. Freightliner Corp.*,
   714 F.2d 498 (5th Cir. 1983) ..........................................................10

*Terrell v. Household Goods Carriers' Bureau*,
   494 F.2d 16 (5th Cir. 1974) ..........................................................14

*Tyler v. Union Oil Co. of Cal.*,
   304 F.3d 379 (5th Cir. 2002) ............................................................................9

*United States v. 14.38 Acres of Land*,
   80 F.3d 1074 (5th Cir. 1996) ............................................................................9

*Univ. of R.I. v. A.W. Chesterton Co.*,
   2 F.3d 1200 (1st Cir. 1993) ............................................................................10

## **INTRODUCTION**

GE's renewed motion to exclude Dr. House's testimony ("Motion," Dkt. 269) should be rejected just like its prior motions on these very issues.

GE does not present a challenge to Dr. House's methodology—which addresses the extent to which damages are, if at all, affected by this Court's March 30, 2018 ruling (the "March 30 Order"). Rather, GE quibbles with the size of Dr. House's adjustments. This is not grounds for exclusion, but fodder for cross examination *at best*. Indeed, the infirmity of GE's attack is laid bare by the fact that GE's own damages expert, who was asked to address the same question, did not identify any adjustments attributable to GE's disparagement and software policies. In light of GE's own estimate of zero, the assertion that Dr. House insufficiently accounted for lost profits caused by GE's disparagement and software policies rings hollow.

GE's Motion also includes criticisms that have already been rejected by this Court on multiple occasions. Indeed, GE admits to previously submitting eight separate briefs on the very issues that it now argues require exclusion of Dr. House's opinions. (Dkt. 269 at fn. 56.) This Court has on more than one occasion rejected GE's arguments. Most notably, this Court has held that Dr. House's damages opinions are admissible and upheld the jury's finding that Dr. House's damages calculations excluded all other causes unrelated to GE's conduct. As much as GE would like, it does not get a "do-over" of its prior rejected arguments simply because of the Court's new trial order. As this Court informed GE when it raised the prospect of another attack on Dr. House's analysis, "we dealt with all of these *Daubert* motions before. We tried the case . . . . we have dealt with every bit of that." (Dkt. 272-1 at 30:12-31:24.) GE nevertheless seeks yet again to exclude Dr. House's testimony on identical grounds as its previous attempts. This Motion should be denied.

## BACKGROUND

On January 9, 2017, Plaintiffs served the expert report of Dr. House (the "Initial House Report"). (Dkt. 97-1 at App. 001-164.) To calculate damages in the GE anesthesia machine service market, Dr. House utilized a benchmark or yardstick approach. His benchmark was derived from a body of economic literature that has had significant predictive value across a wide array of products. (*Id*. at App. 076-091.) Dr. House estimated damages for the Plaintiffs that sell refurbished GE anesthesia machines using a 2015 refurbished equipment market study as a yardstick measure. (*Id*. at App. 091-092.) Using these methodologies, Dr. House estimated that Plaintiffs suffered approximately $44 million in lost profits due to GE's anticompetitive conduct. (*Id*. at App. 005.) Dr. House's estimate of damages excluded damages caused by factors unrelated to GE's alleged anticompetitive conduct. (*Id*. at App. 003-004.)

Prior to trial, GE moved to exclude Dr. House's damages testimony on a number of grounds. (Dkt. 97.) GE argued that Dr. House's use of the first mover advantage was unreliable and did not fit the facts of the case. (*Id*. at 7-14.) GE also moved to exclude Dr. House's calculation of damages for the refurbisher Plaintiffs as unreliable. (*Id*. at 15.) The Court denied GE's motion. (Dkt. 149.) The Court held it was "not persuaded that Dr. House's opinions are unreliable or that his methodology is materially flawed." (*Id*. at 7.) The Court held that "GE has not shown that the first-mover advantage literature, including the Urban Benchmark, is based on an unreliable economic theory" and that "Dr. House's methodology for calculating damages sufficiently fits the facts of this case." (*Id*.) The Court also rejected GE's criticism of Dr. House's calculation of refurbisher damages, holding that "to the extent GE is concerned that [Dr. House's] investigation [of the cause of Plaintiffs' lost sales] was inadequate, GE can attack Dr. House's testimony on cross-examination." (*Id*. at 9.)

After a seven day-trial, the jury found for Plaintiffs and awarded damages in the amounts

2

calculated by Dr. House. (Dkt. 165 at 21-32.) Pursuant to a special verdict form proposed by GE, the jury also found that Plaintiffs' damages were caused solely by GE's anticompetitive conduct and no other factors. (*Id*.) GE filed post-trial motions on a number of grounds, including that there was insufficient evidence demonstrating GE's conduct proximately caused Plaintiffs' injury or damages. (Dkt. 193.) GE argued, among other things, that the damages award should be reversed because (i) "Dr. House's use of the 'First Mover' literature is unreliable" (ii) Dr. House supposedly ignored factors "independent from GE's conduct, that caused Plaintiffs' servicing businesses' failure to grow" and (iii) Dr. House's estimate that Plaintiffs' businesses would grow by 2.72 times but for GE's conduct was not supported by the evidence. (*Id*. at 8-11.) In the March 30 Order, the Court rejected these arguments. (Dkt. 247 at 38-40.) In doing so, the Court pointed out that many of GE's arguments "mirror[ed]" the arguments made in GE's *Daubert* motion and rejected them for the same reasons. (*Id*. at 39.) The Court found that all other arguments related to Dr. House's testimony, "including Dr. House's failure to identify a second and third mover and Dr. House's 2.72 growth factor," were waived. (*Id*.) In the March Order, the Court also held that Plaintiffs did not present substantial evidence demonstrating that GE's software policies and disparagement, standing alone, constituted antitrust violations. (*Id*. at 40-44.)[1] The Court thus ordered a new trial on damages. (Dkt. 255.) Following the Court's guidance, the parties agreed that "any new expert disclosure must be limited to damages issues raised by the Court's March 30, 2018 Order, *i.e.*, whether and to what extent the Court's rulings affected Plaintiffs' claims for damages." (Dkt. 259 at 2.)

On July 10, 2018, Dr. House issued a Supplemental Report that addressed this very question. (Dkt. 270 at Appx. 014-038). In this report, Dr. House assessed the impact of GE's

---

[1] The Court also ruled that SAS Acquisitions, Inc. ("SAS") was only harmed by GE's training policy, but not its parts policy. (Dkt. 247 at 46-47.) Dr. House performed an alternative calculation of damages for SAS.

disparagement and software policies on Plaintiffs, separate and apart from GE's unlawful parts and training policies.  (*Id.* at Appx. 020-024).  Ultimately, Dr. House concluded that GE's disparagement had no significant impact on Plaintiffs independent of GE's anticompetitive parts and training policies because "GE's disparaging conduct was heavily intertwined" with those policies.  (*Id.* at Appx. 021.)  With respect to software, Dr. House concluded that GE's software policies potentially had a minimal impact on Plaintiffs' damages, and estimated that an adjustment of ████ from his prior estimate was appropriate.  His adjustment was based upon

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████  (*Id.* at Appx. 021-023).

In response to this analysis, GE's damages expert, Ms. Erica Bramer, did not identify *any* specific amount of damages Plaintiffs suffered solely as the result of GE's disparagement or software policies.  (Dkt. 276-1; 10/2/18 Bramer Depo. Tr. at 189:3-190:6; 201:14-19, attached as Exhibit A).

## **LEGAL STANDARD**

An expert may provide opinion testimony under Federal Rule of Evidence 702 if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." *Retractable Techs., Inc. v. Becton Dickinson*, No. 2:08-cv-16-LED-RSP, 2013 WL 4776189, at *1 (E.D. Tex. Sept. 6, 2013) (quoting Fed. R. Evid. 702).

"*Daubert* and Rule 702 are safeguards against unreliable or irrelevant opinions, not guarantees of correctness." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 854 (Fed. Cir.

2010); *SimpleAir, Inc. v. Google Inc.*, No. 2:14-cv-00011-JRG, 2015 U.S. Dist. LEXIS 135915, at *2-3 (E.D. Tex. Oct. 5, 2015). As this court recognized, "the trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system." (Dkt. 149 at 2) (quoting *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996)). Accordingly, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." (*Id.*) (quoting *Daubert v. Merrell Dow*, 509 U.S. 579, 596 (1993)).

It is well settled that damages need not be identified with precision in antitrust cases. *Lerhman v. Gulf Oil Corp.*, 500 F.2d 659, 668 (5th Cir. 1974) ("[I]t will be enough if the evidence show(s) the extent of the damages as a matter of just and reasonable inference, although the result be only approximate."). This is because "a defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages . . . is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible." *Eastman Kodak Co. of N.Y. v. S. Photo Materials Co.*, 273 U.S. 359, 379 (1927).

## ARGUMENT

### I.    GE Does Not Provide Any Basis to Exclude Dr. House's Analysis Relating to Disparagement.

GE does not attack the methodology Dr. House used concerning disparagement. Instead, GE objects to his conclusion that no adjustment was necessary. This is not a basis for exclusion.

In his Supplemental Report, Dr. House explained that his initial damages calculations did not separate out precise amounts of damages caused by different types of GE's allegedly anticompetitive conduct.[2]  (Dkt. 270 at Appx. 021.)  As a result, to account for the Court's

---

[2] The cases cited by GE in support of their assertion that Dr. Houses' adjustment related to disparagement was inadequate are all inapplicable.  All of those cases concerned instances where the excluded expert testimony failed to disaggregate between the lawful and unlawful conduct.  *See Infusion Res., Inc. v. Minimed, Inc.*, 351 F.3d 688, 695 n.8 (5th Cir. 2003) (striking report that used exact same damages methodology to calculate damages for breach

finding that GE's disparagement did not violate the Sherman Act, Dr. House sought to identify damages caused solely by GE's disparagement, independent of GE's parts and training policies. Dr. House explained this was proper because any losses caused by disparagement related to parts and training concerns were caused "by GE's actual withholding of parts and training" rather than the disparagement itself.  (*Id.*)[3]  Because GE's disparagement was inextricably intertwined with GE's parts and training policies, Dr. House found that the independent impact of the disparagement on damages was *de minimis*, thus requiring no adjustment.  (*Id.*)

GE does not dispute that Dr. House's methodology is sound.  Nor does GE dispute that Dr. House's analysis is grounded in the record.  GE only argues with Dr. House's *interpretation* of the record by disputing that GE's disparagement overwhelmingly concerned its parts and training policies.  (Dkt. 269 at 7-8.)  This is not grounds for exclusion.  Even if it was, this argument relies on a nonsensical interpretation of the record and should be rejected.

*First*, a disagreement between the parties as to how an expert interprets relevant facts are not grounds for exclusion under *Daubert*.  *See Blitzsafe Tex., LLC v. Honda Motor Co.*, No. 2:15-cv-1274-JRG-RSP, 2017 U.S. Dist. LEXIS 176613, at *28 (E.D. Tex. Jan. 10, 2017) ("The fact that Volkswagen disagrees with Dr. Becker's interpretation of the facts does not make his opinion unreliable under *Daubert*.");  *Lyondell Chem. Co. v. Albemarle Corp.*, No. 1:01-cv-

---

of contract and other non-antitrust claims after antitrust claims had been dismissed); *Children's Broad. Corp. v. Walt Disney Co.*, 245 F.3d 1008, 1018 (8th Cir. 2001) (expert failed to distinguish between claims in original complaint and those dismissed at summary judgment); *Prepaid Wireless Servs. v. Sw. Bell Wireless, Inc.*, No. M-00-302, 2002 U.S. Dist. LEXIS 28229, at *11 (S.D. Tex. July 23, 2002) (failure to account for "internal and external [legal] factors that could effect [sic] Plaintiff's future profits."); *IQ Prod. Co. v. Pennzoil Prod. Co.*, 305 F.3d 368, 377 (5th Cir. 2002) (expert did not distinguish between unlawful conduct and "the failure to label claims which the district court correctly rejected.").  Here, Dr. House does disaggregate any damages caused by GE's disparagement and its illegal conduct.   (Dkt. 270 at Appx. 021.)  GE does not take issue with Dr. House's methodology in making this adjustment, it only takes umbrage with his final figure, notwithstanding that its own expert reach the same conclusion. (Dkt. 276-1; Ex. A at 189:3-18.)

[3] *See also* 9/18/18 House Depo. Tr. at 119:20-120:10, attached as Exhibit B (the only disparagement of significance is GE "trying to . . . tell the market that ISOs are at a disadvantage because they do not have parts, they do not have training.").

6

00890-MAC, 2007 U.S. Dist. LEXIS 97833, at *21-23 (E.D. Tex. Mar. 8, 2007)(disagreement with expert's interpretation of the factual record is not an appropriate basis for a *Daubert* challenge).   Nor does GE's contention that Dr. House ignored "scores" of disparagement unrelated to its parts and training policies warrant exclusion.   *See i4i Ltd. P'ship*, 598 F.3d at 855-56 ("The existence of other facts . . . does not mean that the facts used failed to meet the minimum standards of relevance or reliability.").

*Second*, GE's assertion that Plaintiffs' disparagement allegations concerned communications well beyond GE's parts and training policies is incorrect.   The crux of GE's position is that the complained-of disparagement trial concerned *all* of GE's marketing materials. (Dkt. 269 at 2) ("Plaintiffs . . . sought lost profits damages resulting from . . . GE's marketing efforts to distinguish itself from third-party servicers like Plaintiffs.").   Not true.   Dr. House never testified that all of GE's marketing constituted improper disparagement or were anticompetitive.   Rather, Dr. House opined that GE's disparaging actions expressly concerned "ISO's *service training and parts access* to suggest that they will not be able to fulfill their contractual obligations." (Dkt. 97-1 at App. 041) (emphasis added).   Indeed, according to Dr. House, this conduct was anticompetitive because "GE engaged in this disparagement while simultaneously denying ISOs the very same access it publicized." (*Id.* at App. 058.)[4]

At bottom, GE appears to take issue with the fact that Dr. House made "no adjustment whatsoever" to the damages calculations to account for GE's disparagement. (Dkt. 269 at 6.) Although GE undoubtedly wishes the adjustment were larger, it should be unsurprised by this result, as it has told this Court numerous times that "none of [the Plaintiffs] identified any

---

[4] GE points to a handful of communications that it contends are disparagement of Plaintiffs unrelated to its parts and training policies.  (Dkt. 269 at fn. 21-22.)  But these examples are either not disparagement at all (*e.g.*, a marketing communication that touted GE's use of calibrated test equipment), or one-off instances that GE itself argues did not harm Plaintiffs. (Dkt. 194 at 4.)

customer or opportunity they lost because of the alleged disparagement." Dkt. 194 at 4. GE's expert also echoed this position, and did not identify any amount of damages due to GE's disparagement. (Dkt 276-1.)[5]

## II.   GE Does Not Provide Any Basis to Exclude Dr. House's Analysis Relating to GE's Software Policies.

GE challenges Dr. House's damages adjustment related to GE's software policies for three reasons: (i) Dr. House's methodology is supposedly inconsistent with Plaintiffs' trial testimony; (ii) Dr. House primarily relied on review of GE contracts by supporting staff; and (iii) GE points to a handful of examples where ████████████ purport to require software access in order to service.   (Dkt. 269 at 9-10.)  These criticisms all fall short.

*First*, Dr. House's use of ████████ as a metric by which to estimate losses caused by lack of access to software is not belied by Plaintiffs' testimony.  The sole snippet of testimony GE cites is from Tom Green of Paragon Service.  (*Id*. at fn. 26.)  Mr. Green testified that GE's software policy "eliminates those accounts that require the software upgrades to be part of the bid; and if we can't do it, we can't bid on a contract." (Dkt 177 at 91:18-20).  This testimony is consistent with Dr. House's analysis.[6]  Dr. House sought to identify the accounts that require software upgrades and indeed removed those customers from the overall damages base.  (Dkt. 270 at Appx. 021-023.)  There is no daylight between this analysis and Plaintiffs' testimony.[7]

*Second*, there is nothing improper or unreliable about how Dr. House assessed whether an

---

[5] At her deposition, Ms. Bramer testified that she identified a single instance of lost sales due solely to GE's disparagement, but could not identify it. Ex. A at 189:3-18. Ms. Bramer does not make any adjustment to the jury's damages findings due to disparagement.

[6] Dr. House considered Plaintiff testimony in his analysis and concluded that there was not significant testimony at trial regarding Plaintiffs' lack of access to software. Ex. B at 66:16-22.

[7] Indeed, GE has even argued that there is no testimony as to how lack of access to software "precluded [Plaintiffs] from servicing anesthesia machines, how they lost business as a result of the policies, or how they will lose any business in the future." (Dkt. 194 at 8.)  GE cannot walk away from this position now.

adjustment is required.  In determining the impact of GE's software policies, Dr. House relied on

his review of the overall record (including Plaintiffs' trial testimony), interviews with Plaintiffs,

and a review of the contracts produced in this case.[8]  That part of this analysis was conducted by

a support team does not make this methodology unreliable.  Experts frequently rely on work

conducted by a support team, and such reliance is not a basis for preclusion.  *See Imperial

Trading Co. v. Travelers Prop. Cas. Co. of Am.*, No. 06-4262, 2009 U.S. Dist. LEXIS 132828, at

*5-6 (E.D. La. July 28, 2009) ("Federal Rule of Evidence 703 is clear that experts are not

required to prepare all the documents that support an opinion as long as the information is of the

type reasonably relied on by experts in his field."); *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d

85, 94 (2d Cir. 2000) ("[A]n expert may rely on data that [he] did not personally collect."); *In re

James Assocs.*, 965 F.2d 160, 172 (7th Cir. 1992) ("An expert is of course permitted to testify to

an opinion formed on the basis of information that is handed to rather than developed by him.").[9]

Indeed, GE's expert also employed a five-person support team to support her work.[10]

　　　*Third*, GE's cherry-picking of a handful of purported facts that run contrary to Dr.

House's analysis do not make the analysis unreliable.  Such criticisms go to the weight of Dr.

House's opinion, not its reliability.  *See United States v. 14.38 Acres of Land, More Or Less

Situated in Leflore Cty., Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) ("questions relating to the

bases and sources of an expert's opinions affect the weight to be assigned that opinion rather than

its admissibility and should be left for the jury's consideration.") (quotation omitted); *Tyler v.

Union Oil Co. of Cal.*, 304 F.3d 379, 392-93 (5th Cir. 2002) (holding that an objection to an

---

[8] Ex. B at 37:22-38:2; 48:2-9; 51:2-18; 65:22-66:15.

[9] That Dr. House's support team reviewed Plaintiffs' contracts prior to the initial trial is irrelevant, as access to software was in dispute at the first trial.  (Dkt. 97-1 at App. 041.)

[10] Ex. A at 31:17-32:3.

expert's self-created database as unreliable did not affect admissibility); *Gen. Elec. Capital Bus. Asset Funding Corp. v. S.A.S.E. Military, Ltd.*, No. 5:03-cv-00189-WRF, 2004 U.S. Dist. LEXIS 30714, at *11 (W.D. Tex. Oct. 21, 2004) ("The reliability of data underlying an expert's opinion goes to the weight of this evidence, but should not serve as a basis for its exclusion.").

Moreover, Dr. House explained why GE's purported counter-examples do not undermine his conclusion, including that none of the documents proffered by GE demonstrate that access to software is required to bid on a contract.[11]  GE's disagreement with Dr. House is not grounds for exclusion but, at best, fodder for cross examination.  *See Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc.*, No. 6:11-cv-00492-RWS-KNM, 2017 U.S. Dist. LEXIS 178477, at *9 (E.D. Tex. Oct. 27, 2017) ("Questions about what facts are most relevant or reliable . . . are for the jury.") (quoting *i4i Ltd. P'ship*, 598 F.3d at 856); *Ericsson Inc. v. TCL Commun. Tech. Holdings, Ltd.*, No. 2:15-cv-00011-RSP, 2017 U.S. Dist. LEXIS 183216, at *31 (E.D. Tex. Nov. 4, 2017) ("To the extent [the expert's] credibility, data, or factual assumptions have flaws, these flaws go to the weight of the evidence, not to its admissibility.") (quotation omitted).[12]

---

[11] *See, e.g.*, Ex. B at 40:12-41:2; 58:8-60:15; 61:17-62:12 (explaining that the ███████████████████████████████████████████████████████
██████████████████████████████████████████████████

[12] None of the cases cited by GE on this point apply to this case.  *Soden v. Freightliner Corp.*, 714 F.2d 498, 501 (5th Cir. 1983) precluded expert testimony that relied on a review of 3,000 car accident reports that were not available to the opposing party or the Court, thus leaving no ability to assess whether the reports were sufficiently related to the facts of the case.  This is markedly different from the present instance, where Dr. House relied on his review of the overall case record, including hospital contracts.   GE does not and cannot dispute the case record is sufficiently relevant.   *Univ. of R.I. v. A.W. Chesterton Co.*, 2 F.3d 1200, 1218 (1st Cir. 1993) excluded expert testimony regarding assessment of damages caused by faulty ship repairs "not based solely on the conventional examination and compilation of documents" but rather based on an "unorthodox method of reconstruction" of interviews with unidentified subjects.   This is also different from the present instance, where the Dr. House's methodology included a "conventional examination" of documents that defendant claimed was missing in *Chesterton*.  Finally, in *Lyman v. St. Jude Med. S.C., Inc.*, 580 F. Supp. 2d 719, 726 (E.D. Wis. 2008), the expert's damages analysis was found to be unreliable because he did nothing to verify the accuracy of the underlying data he incorporated in his report, instead relying on the word of counsel.  Here, Dr. House did not rely on counsel to verify the accuracy the underlying information.  In any event, GE does not question the veracity of the any documents in the case record, it simply quibbles over the findings Dr. House derived from this information.

**III.    The Jury and This Court Have Already Found That Dr. House's Methodology Apportions Between Lawful and Non-Lawful Causes.**

GE's again seeks to exclude Dr. House's testimony asserting that he failed to apportion damages resulting from GE's conduct as opposed to legal competition.  (Dkt. 269 at 11.) Beyond being incorrect, this argument has been explicitly rejected by the jury.

In the special verdict form (drafted by GE), the jury found that each Plaintiff was damaged *solely* by GE's conduct in the precise amounts calculated by Dr. House.  (Dkt. 165 at 21-32.)  This finding specifically excluded lost profits resulting from any lawful cause, such as increased competition from GE or asset managers.  (*Id.*; *see also* Dkt. 272 at 1-7.)  GE has already once sought to overturn this finding, arguing in its motion for judgment as a matter of law that "Plaintiffs failed to prove . . . that GE's parts or training policies were the proximate cause of their respective injuries."  (Dkt. 193 at 2.)  The Court denied GE's motion.  (Dkt. 247 at 39-40.)[13]

GE now resurrects these *exact same arguments* in its renewed *Daubert* motion.[14]  There is no basis for the Court to entertain these arguments.  Collateral estoppel and the law of the case doctrine preclude GE from re-litigating jury findings that this Court's March 30 Order did not disturb.  *See Garziano v. E.I. Du Pont de Nemours & Co.*, 818 F.2d 380, 394 (5th Cir. 1987) (holding that the jury's finding that plaintiff was "not entitled to punitive damages" constituted "the law of the case."); *In re Cipolla*, 541 Fed. App'x 473, 477-78 (5th Cir. 2013) ("[W]hen a

---

[13] GE's arguments are both incorrect and waived.  GE's renewal of the same argument this Court already found waived is nonsensical.  (Dkt. 269 at fn. 38.)  Re-urging previously waived arguments in light of a new trial does not somehow erase the waiver.  *See Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery*, 202 F. Supp. 2d 371, 376 (D.N.J. 2002) ("While a trial on remand is not in the same procedural posture as an appeal, the premise underlying the waiver of a *Daubert* challenge is the same: a party should not be permitted to circumvent the Federal Rules of Civil Procedure and Orders of the Court, and put its adversary at a significant disadvantage on the eve of a retrial, merely because it succeeded on its appeal of wholly unrelated issues.")

[14] *Compare* Dkt. 193 at 9 ("Dr. House's methodologies ignore the many factors, independent from GE's conduct, that caused Plaintiffs' servicing businesses' failure to grow as much as Dr. House's methodology suggests would have occurred.") *with* Dkt. 269 at 11 (Dr. House's methodologies ignore each of these factors . . . in order to assign the entirety of Plaintiffs' inability to grow to whatever conduct has been deemed anticompetitive.")

court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages in the same case."); *Recoveredge, L.P. v. Pentecost*, 44 F.3d 1284, 1295 (5th Cir. 1995) (holding that an issue determined by a jury "cannot again be litigated between the same parties in any future lawsuit."); *see also* Dkt. 272.

In addition to waiving this this argument, the assertion that Dr. House's methodology does not apportion damages between lawful and unlawful causes in is wrong.  In his report and at trial, Dr. House explained that his analysis *does* account for lawful factors and that the same were excluded from his damages calculations, and the jury reached the same conclusion.[15]

## IV.    This Court has Twice Ruled that Dr. House's Servicing Damages Methodology Is Reliable.

In its Motion, GE tries for the *third time* to exclude Dr. House's testimony regarding Plaintiffs' GE anesthesia servicing damages on the exact same grounds this Court has already twice rejected.  There is no reason for a different result here.

GE first argues that the Dr. House's use of the first mover advantage literature is an inappropriate yardstick to calculate damages.  (Dkt. 269 at 12.)[16]  But the Court has already *twice* held that "GE has not shown that the first-mover advantage literature, including the Urban Benchmark, is based on an unreliable economic theory[,]" (Dkts. 149 at 7; 247 at 39) and GE offers nothing to alter that conclusion.

Similarly, GE's criticisms of the first mover advantage on the grounds that it (i) treats ISOs as a single entrant; (ii) does not account for differences in marketing spend among market

---

[15] Dkt. 178 at 81:21-25; Dkt.179 at 35:24-37:3.

[16] In its Motion, GE (again) argues that the first mover advantage literature is "not a yardstick test" because Dr. House has purportedly failed demonstrate the similarity between the markets analyzed in the first mover advantage literature and the GE anesthesia service market.  (Dkt. 269 at fn. 41.)  Not so.  At trial, Dr. House testified as to numerous similarities between the GE anesthesia service market and the wide variety of markets analyzed in the first mover advantage literature, which includes heavy equipment service industries.  Dkt. 178 at 89:14-91:10; Dkt. 179 at 85:4-7.

entrants; and (iii) fails to identify second and third market entrants (Dkt. 269 at 12-13) were either rejected by the Court in its initial *Daubert* Order (Dkt. 149 at 7)[17] or the March 30 Order. (Dkt. 247 at 39-40.)   Nothing has changed from GE's initial *Daubert* motion and Rule 50(a) motion and the Motion should be rejected again.

GE's argument that Dr. House no longer has justification for determining that a "before and after" methodology is unreliable because of the Court's ruling on disparagement (Dkt. 269 at 12) is both incorrect and irrelevant.  This suggestion is incorrect because Dr. House opined that a variety of factors, along with disparagement, made the use of the "before" period unsuitable as a benchmark, including earlier litigation concerning Datex-Ohemda's (now GE) anticompetitive conduct and the Great Recession.[18]

Moreover, the argument that Dr. House could or should have used a "before and after" methodology misses the point.  The presence of alternative methodologies does not by itself make Dr. House's methodology unreliable.  *See, e.g.*, *Johnson v. Arkema, Inc.*, No. 6:09-cv-00107-WSS, 2010 U.S. Dist. LEXIS 148982, at *76-77 (W.D. Tex. Dec. 16, 2010) (allowing expert testimony that was not premised on expert's "preferred methodology," because although expert "chose to base his opinion on something less than his "gold standard," . . . that does not make it unreliable.").  Indeed, courts consistently hold that both the "before and after" *and* "yardstick" methodologies are appropriate means of calculating antitrust damages.  *See Lerhman*, 500 F.2d at 667.  This does not render Dr. House's use of the first mover advantage unreliable, especially given that this methodology has been twice approved by this Court, and the inherent uncertainty in calculating antitrust damages.  *See Terrell v. Household Goods Carriers'*

---

[17] ("GE's concerns related to Dr. House's treatment of ISOs as a single market entrant are concerns of factual sufficiency and not of methodological error.")  In addition to being waived, these arguments are also all incorrect. (*See* Dkt. 210 at 9-13.)

[18] 1/23/17 House Depo. Tr. at 125:18-126:22; 131:14-25, attached as Exhibit C.

*Bureau*, 494 F.2d 16, 23 n.12 (5th Cir. 1974) (permitting imprecise damages in antitrust cases because "[t]he wrongdoer must bear the risk of the uncertainty in measuring the harm he causes.")

Nor does the Court's Order regarding SAS impact Dr. House's use of the first mover advantage literature as a benchmark.  In its order, the Court ruled that SAS was injured only by GE's training policy, but not its parts policy.  (Dkt. 247 at 47.)  In order to compute SAS's damages, Dr. House relied on John Uber's trial testimony that identified specific customers SAS lost as a direct result of GE's training policy.  (Dkt. 270 at Appx. 018-020.)

GE does not argue that Dr. House's damages calculations with regard to SAS is unreliable.  Rather, GE asserts that Dr. House's use of a different methodology in a limited instance somehow demonstrates that all others, including the first mover advantage yardstick, are unreliable.  This is baseless.  The use of different methodologies, even by the same expert, is widely accepted, and the use of one methodology does not invalidate others.  *See Arkema, Inc.*, 2010 U.S. Dist. LEXIS 148982, at *76-77; *More JB, Inc. v. Nutone Inc.*, No. 1:05-cv-00338-JRN, 2007 U.S. Dist. LEXIS 102151, at *43 (W.D. Tex. Mar. 21, 2007) (admissibility is not implicated where competing "economic experts [are] simply utilizing different, but not necessarily unreliable, methodologies to form their conflicting opinions.")  Moreover, the simple fact is that Dr. House's damages methodology for assessing damages for the remaining Plaintiffs apart from SAS posed a different analytical question.  And there is nothing to be gleaned from the use of different analyses to answer different questions.

Ultimately, GE seeks to preclude Dr. House's testimony because he did not use GE's preferred damages methodology, in essence positing that Ms. Bramer's method of relying on Plaintiff self-identification of lost profits is the *only* acceptable way to determine antitrust damages.  There is no legal basis for this position, and GE cites none.  *See Malcolm v. Marathon*

*Oil Co.*, 642 F.2d 845, 858 (5th Cir. 1981) (plaintiff was not required to identify specific lost sales in its damages analysis); *Lehrman*, 500 F.2d at 667-68 (both the "before and after" and "yardstick" methods are acceptable antitrust damages methodologies); *More JB, Inc.*, 2007 U.S. Dist. LEXIS 102151, at *43 (holding that plaintiff's expert was not required to employ the defendant expert's preferred "market share analysis" damages calculation methodology).   In addition, Ms. Bramer's testimony should be excluded for failing to credit jury findings.  (Dkt. 275.)

### V.      Dr. House's Refurbished Anesthesia Machine Damages Are Reliable.

Once again, GE attacks another facet of Dr. House's analysis on the exact same grounds that have been twice rejected by this Court.  Just as in its original *Daubert* motion and again in its JMOL motion, GE criticizes Dr. House's use of a 2015 refurbished machine market study as a yardstick for lost sales because it supposedly does not analyze Plaintiffs' "lost sales or opportunities."  (Dkt. 269 at 14-15.)  The Court specifically rejected this criticism as a basis for exclusion.  (Dkt. 149 at 9.)  The Court also held that *El Aguila Food Prods., Inc. v. Gruma Corp.*, 301 F. Supp. 2d 612 (S.D. Tex. 2003) is inapplicable because, unlike the expert testimony in *El Aguila,* Dr. House "recounts potential externalities . . . and explains why these considerations did not alter his conclusions."  (*Id*.)  The jury also rejected this criticism, finding that the damages calculated by Dr. House were caused solely GE's conduct.  (Dkt. 165 at 21-32.)

Although GE asserts that Dr. House's refurbisher damages calculations must "account for the Court's [March 30] order," (Dkt. 269 at 14) it does not explain how that order alters this Court's rejection of GE's criticisms in the slightest.  GE does not because it cannot.  The Court's March 30 Order only necessitated that the impact (if any) of GE's software policies and disparagement be taken into account in Plaintiffs' damages calculation.  As discussed in Sections I-II, supra, Dr. House did precisely that.

15

Dated: October 29, 2018                    Respectfully submitted,


                                           */s/ Sam Baxter*
                                           Samuel F. Baxter
                                           Texas State Bar No. 01938000
                                           sbaxter@mckoolsmith.com
                                           Jennifer L. Truelove
                                           jtruelove@mckoolsmith.com
                                           MCKOOL SMITH P.C.
                                           104 East Houston, Suite 300
                                           Marshall, Texas 75670
                                           Telephone: (903) 923-9000
                                           Facsimile: (903) 923-9099

                                           John C. Briody
                                           jbriody@mckoolsmith.com
                                           Radu A. Lelutiu
                                           rlelutiu@mckoolsmith.com
                                           James H. Smith
                                           jsmith@mckoolsmith.com
                                           MCKOOL SMITH P.C.
                                           One Bryant Park, 47th Floor
                                           New York, New York 10036
                                           Telephone: (212) 402-9400
                                           Facsimile: (212) 402-9444

                                           Paul F. Ferguson, Jr.
                                           cferguson@thefergusonlawfirm.com
                                           The Ferguson Law Firm
                                           350 Pine Street, Suite 1440
                                           Beaumont, TX
                                           Telephone: (409) 832-9700
                                           Facsimile: (409) 832-9700

                                           Paul Bartlett, Jr.
                                           paul@paulbartlettjr.com
                                           203 Zornia Drive
                                           San Antonio, Texas 78213
                                           Telephone: (210) 341-6703
                                           Facsimile: (210) 525-8011


                                           ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who have consented to electronic services on this the 29th day of October 2018.  Local Rule CV-5(a)(3)(A).

*/s/ James H. Smith*

## CERTIFICATE OF AUTHORIZATION TO SEAL

I hereby certify that pursuant to the Amended Protective Order in the above captioned case, this Motion and Exhibits A-C contains material that has been designated confidential under the protective order in this case (Dkt. 77.)  Accordingly, this Motion and Exhibits A-C are being filed under seal.

*/s/James H. Smith*

17